UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| v. | : |
| | :  Criminal No.  25-cr-00058-02 (CJN) |
| DANIEL JUN PARK, | : |
| | : |
| Defendant. | : |

## STATEMENT OF OFFENSE

Pursuant to Federal Rule of Criminal Procedure 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, DANIEL JUN PARK ("PARK" or "Defendant") with the concurrence of his attorneys, agree and stipulate as follows:

### Background

1. Organization A was a non-profit organization with employees in the District of Columbia and around the world that provided educational programs, training, and development assistance in the Middle East and North Africa. Organization A maintained its headquarters office in the District of Columbia.

2. Organization A's computer server was located in the District of Columbia.

3. Organization A had an account with Amazon.com, Inc. ("Amazon"), whose headquarters are located in Seattle, Washington.

4. Defendant LAURA LEE DUDLEY ("DUDLEY") was an employee of Organization A from January 7, 2008, until May 3, 2022. At the time of her separation from Organization A, DUDLEY worked as an accountant in the Accounts Receivable Department at

Organization A's headquarters office. Prior to August 31, 2015, DUDLEY was the administrative assistant in the Administrative Department at Organization A's headquarters.

5. Defendant DANIEL JUN PARK ("PARK") was an employee of Organization A from April 20, 2015, until July 21, 2022. PARK worked in-person as an administrative assistant in the Administration Department at Organization A's headquarters.

6. As part of her duties, DUDLEY was solely responsible for obtaining and distributing Organization A's corporate credit cards to authorized employees around the world. As a result, DUDLEY had access to the credit cards and their numbers ("credit cards") issued to Organization A's employees, including but not limited to PERSON 1.

7. DUDLEY and PARK did not have a corporate credit card in their names, nor were they authorized to use Organization A's credit cards to make personal purchases.

8. As part of his duties, PARK was responsible for purchasing supplies for the Administrative Department at Organization A's headquarters. PARK was authorized to use Organization A's credit card assigned to PERSON 1, to make purchases for the benefit of Organization A.

9. Organization A required its employees to report and record any purchases and expenses they made using Organization A's credit cards into an electronic purchase and expense log ("log") and to provide a scanned copy of the corresponding bill and/or invoice in support of the purchase or expense.

10. Organization A employees, including DUDLEY and PARK, had the ability to access Organization A's log. A new log of expenses and purchases was generated each month and was supposed to be reconciled against monthly credit card statements.

11. Organization A's practice was to timely pay its credit card bills by the end of the billing cycle in order to avoid paying interest charges and fees.

## The Conspiracy

12. From at least January 1, 2020, continuing through at least June 30, 2022, within the District of Columbia and elsewhere, the defendants, LAURA LEE DUDLEY and DANIEL JUN PARK, did knowingly conspire, combine, confederate, and agree with each other to commit the following offenses: (a) they devised and intended to devise a scheme to defraud Organization A and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing and attempting to execute the aforementioned scheme to defraud, caused mail matter to be sent by the United States Postal Service and commercial carriers, in violation of 18 U.S.C. § 1341 (mail fraud); and (b) they devised and intended to devise a scheme and artifice to defraud Organization A and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing and attempting to execute the aforementioned scheme to defraud, did transmit and cause to be transmitted, by means of wire communication in interstate commerce, certain writings, signs, signals, pictures and sounds, in violation of 18 U.S.C. § 1343 (wire fraud).

13. In total, through the manner and means described herein, DUDLEY and PARK caused a total loss to Organization A of $393,340.57. Of this amount the personal gain to PARK was $59,515.57.

## Goal of the Conspiracy

14. It was a purpose of the conspiracy and scheme to defraud for DUDLEY and PARK to obtain property and money from Organization A for their personal use and benefit using Organization A's credit cards and to assist each other in concealing the scheme from Organization

3

A.

## Manner and Means

15. The manner and means by which DUDLEY and PARK would and did carry out the objectives of the conspiracy and scheme to defraud included:

    a. Without authority, ordering and purchasing property and goods, while located in Organization A's headquarters and elsewhere, for their personal use via the internet using Organization A's credit cards assigned to other Organization A employees.

    b. Ordering and purchasing property and goods for their personal use via the internet by using Organization A's credit cards to make unauthorized payments to Amazon.com, Inc. and personal PayPal accounts. All of the unauthorized orders from Amazon.com and transmissions to PayPal, were made via wire communications in interstate and foreign commerce. Many of those wire communications were initiated from inside the District of Columbia and transmitted to outside the District of Columbia

    c. Failing to report and record their unauthorized purchases and expenses using Organization A's credit cards in Organization A's log.

    d. Failing to provide supporting bills and/or invoices for their unauthorized purchases and expenses to Organization A's log.

    e. Reporting and recording false and fraudulent information about their unauthorized purchases and expenses in Organization A's log, including but not limited to: the nature of the goods purportedly purchased, the amount of goods, and the cost of unauthorized purchases.

    f. Creating and causing to be created, false and fraudulent bills and/or invoices in support of their unauthorized purchases and expenses.

g. Providing falsified bills and/or invoices to Organization A to support the unauthorized purchases and expenses.

h. Telling Organization A employees that DUDLEY would obtain from PARK missing reports and invoices and/or bills in support of some of the unauthorized purchases and expenses in Organization A's log.

i. PARK providing Organization A with false invoices for unauthorized purchases made by DUDLEY and PARK in order to conceal the scheme.

j. Causing unauthorized purchases to be mailed via the United States Postal Service and commercial carriers to Organization A headquarters, DUDLEY's and PARK's personal residences, and to other individuals.

k. Communicating with each other via their personal cellphones over 150 times in order to coordinate the delivery of unauthorized goods from Amazon for their personal use and to conceal the scheme from other Organization A employees.

l. Ordering and receiving over $300,000 worth of unauthorized purchases and expenses that were paid for using Organization A's credit cards, including but not limited to: gift cards, personal computer system, gaming monitors, electronic devices, jewelry, beauty supplies and cat food.

### Acts Made in Furtherance

### Examples of Unauthorized Personal Purchases

16. Acts that DUDLEY and PARK undertook in furtherance of their conspiracy and scheme to defraud included, but were not limited to, the following:

a. On March 4, 2020, DUDLEY used without authority PERSON 1's Organization A's American Express credit card ("Amex credit card") to order ten $100 Mastercard

gift cards; three $200 Visa gift cards; two $200 Mastercard gift cards; and ten $100 Visa gift cards (Amazon order no. x5041002), totaling $3,158.24 (with fees and taxes). The next day, DUDLEY also used without authority PERSON 1's Organization A's Amex credit card to purchase two bedsheet fasteners and air pods (Amazon order no. x8281831), totaling $59.62. Both of these Amazon orders were mailed to DUDLEY at Organization A's headquarters.

    b.  On March 10, 2020, DUDLEY used without authority PERSON 1's Organization A's Amex credit card to order two $200 Mastercard gift cards; ten $100 Visa gift cards; two $200 Visa gift cards; and ten $100 Mastercard gift cards (Amazon order no. x1325018), totaling $2,951.29. This Amazon order was mailed to DUDLEY at Organization A's headquarters.

    c.  On March 12, 2020, DUDLEY used without authority PERSON 1's Organization A's credit card to order ten $100 Visa gift cards; ten $100 Mastercard gift cards; and two $200 Mastercard gift cards (Amazon order no. x2398619), totaling $2,537.39. In addition, DUDLEY used without authority PERSON 1's Organization A's Amex credit card to order a 500-count box of ForPro professional foil sheets for hair color; alligator hairclips; and a Colortrack hair colorist kit (Amazon order no. x3828259), totaling $67.81. That same day DUDLEY also used without authority PERSON 1's Organization A's credit card to order a book (Amazon order no. x4226637), totaling $35.79.

    d.  On May 20, 2020, DUDLEY used without authority PERSON 1's Organization A's Amex credit card to order ten $100 Mastercard gift cards and ten $100 Visa gift cards (Amazon order no. x1598611), totaling $2,123.49, which were mailed to DUDLEY at her residence in Maryland.

    e.  On May 23, 2020, PARK used without authority PERSON 1's Organization A's Amex credit card to order three $200 Visa gift cards (Amazon order no. x2416211), totaling

$620.85, but costing $508.43 because PARK used Organization A's Amex reward points on the purchases. Amazon order no. x2416211 was mailed to PARK at Organization A's headquarters.

  f. On July 8, 2020, PARK used without authority PERSON 1's Organization A's Amex credit card to pay for purchases on his personal PayPal account, totaling $1,154.98.

  g. PARK reported and submitted to Organization A a false invoice claiming that the $1,154.98 Amazon purchase on July 9, 2020, was for 21 tubs of disinfecting wet wipes from a cleaning supply company in Virginia.

  h. On July 15, 2020, DUDLEY used without authority PERSON 1's Organization A's Amex credit card to order furniture (Amazon order no. x1533021), totaling $36.35, and (Amazon order no. x13957043), totaling $401.78, which was mailed to DUDLEY's residence in Maryland.

  i. On October 27, 2020, DUDLEY used without authority PERSON 1's Organization A's Amex credit card to order ten $100 Mastercard gift cards and ten $100 Visa gift cards (Amazon order no. x4445813), totaling $2,123.49, which were mailed to DUDLEY at her residence in Maryland.

  j. PARK prepared and submitted to Organization A a false invoice (Amazon order no. x7738291) claiming that DUDLEY's $2,123.49 Amazon purchase on October 27, 2020, was for hand sanitizer and disinfectant spray and mailed to Organization A.

  k. On January 14, 2021, DUDLEY used without authority PERSON 1's Organization A's Amex credit card to order a variety of goods, including but not limited to: 2 Alex and Ani bangles; 3 DND gel polish sets; and manicurist solvent (Amazon order no. 2961032), totaling $135.66. Amazon order no. x2961032 was mailed to DUDLEY's residence in Maryland.

l.  On July 5, 2021, PARK used without authority an Organization A's Amex credit card to order three $200 Visa gift cards (Amazon order no. x6293820), totaling $620.85, which were mailed to PARK at Organization A's headquarters.

m.  PARK reported and submitted to Organization A a false invoice claiming that the $620.85 Amazon purchase on July 5, 2021, was for 15 boxes of Chlorox wipes.

n.  On November 15, 2021, PARK used without authority PERSON 1's Organization A's Amex credit card to order a gaming laptop (Amazon order no. x3094648), which was priced at $1,288.49, but costing $892.57, because PARK used Organization A's Amex reward points. The gaming computer was mailed to PARK at Organization A's headquarters.

o.  PARK submitted to Organization A, a invoice claiming that the $892.57 Amazon purchase on November 15, 2021, was for Purell soap dispensers.

p.  On November 25, 2021, PARK used without authority PERSON 1's Organization A's Amex credit card to order a gaming mouse (Amazon order no. x9324239), totaling $135.00, which was mailed to PARK at an address in Colorado.

q.  PARK submitted to Organization A a false invoice claiming that the $135.00 Amazon purchase on November 25, 2021, was for a non-gaming mouse and that it was shipped to Organization A's headquarters.

r.  On December 3, 2021, PARK used without authority PERSON 1's Organization A's Amex credit card to order two $200 Visa gift cards (Amazon order no. x8099453), totaling $413.90, which order was mailed to PERSON 2 in Virginia. PARK failed to provide Organization A with an invoice regarding this purchase.

s.  On December 13, 2021, PARK used without authority PERSON 1's Organization A's Amex credit card to order a television stand (Amazon order no. x9690609),

totaling $153.68, which was mailed to PERSON 2 in Virginia. PARK failed to provide Organization A with an invoice regarding this purchase.

      t.      On December 14, 2021, PARK used without authority PERSON 1's Organization A's Amex credit card to order two $200 Visa gift cards (Amazon order no. x0446612), totaling $413.90, which were mailed to PERSON 2 at a residence in Virginia. PARK failed to provide Organization A with an invoice regarding this purchase.

      u.      On December 20, 2021, PARK used without authority PERSON 1's Organization A's Amex credit card to order a gaming headset (Amazon order no. x0532239), totaling $190.99, which was mailed to PARK at Organization A's headquarters. PARK failed to provide Organization A with an invoice regarding this purchase.

      v.      On December 22, 2021, PARK used without authority PERSON 1's Organization A's Amex credit card to order another gaming headset (Amazon order no. x5445046), totaling $159.98, which was mailed to PARK at Organization A's headquarters. PARK failed to provide Organization A with an invoice regarding this purchase.

      w.      On March 25, 2022, PARK used without authority PERSON 1's Organization A's Amex credit card to order four $100 Mastercard gift cards (Amazon order no. x6309032), totaling $423.80, which were mailed to PARK at Organization A's headquarters.

      x.      PARK reported and submitted to Organization A, a false invoice claiming that the $423.80 Amazon purchase on March 25, 2022, was for 20 Palmolive soap.

      y.      On April 2, 2022, PARK used without authority PERSON 1's Organization A's Amex credit card to order one $100 Mastercard gift card (Amazon order no. x1633046), totaling $105.95, which was mailed to PARK in Virginia.

    z. PARK reported and submitted to Organization A a false invoice claiming that the $105.95 Amazon purchase on April 2, 2022, was for five Purell hand sanitizers.

  17. This proffer of evidence is not intended to constitute a complete statement of all facts known by defendant PARK but is a minimum statement of facts intended to provide the necessary factual predicate for the guilty plea. The limited purpose of this proffer is to demonstrate that there exists a sufficient legal basis for defendant's plea of guilty to the charged crime.

              Respectfully submitted,

              JEANINE FERRIS PIRRO
              United States Attorney

    BY: /s/ Diane G. Lucas
       DIANE G. LUCAS, D.C. Bar No. 443610
       Assistant United States Attorney
       601 D Street, N.W.
       Washington, D.C. 20530
       (202) 252-7724
       Diane.Lucas@usdoj.gov

## DEFENDANT'S ACCEPTANCE

I have read every word of this Statement of Offense. Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, after consulting with my attorney, Frank Salvato, Esquire and Libbey Van Pelt, Esquire, I agree and stipulate to this Statement of Offense. The Statement of Offense is a summary made for the purpose of providing the Court with a factual basis for my guilty plea to the charges against me. It does not include all of the facts known to me regarding theses offenses. I, Daniel Jun Park, make this statement knowingly and voluntarily and because I am in fact guilty of the crimes charged.

Dated: 7/21/2025

Daniel Jun Park
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt and stipulate to this Statement of the Offense

Dated: 7/21/25

Frank Salvato, Esquire
Libbey Van Pelt, Esquire
Attorney for Daniel Jun Park